OPINION
{¶ 1} This appeal involves a challenge to the trial court's imposition of consecutive sentences in two combined criminal cases involving rape and aggravated burglary. Appellant's counsel on appeal has filed a motion to withdraw based on a lack of any viable issues on appeal pursuant to State v. Toney (1970),23 Ohio App.2d 203, 52 O.O.2d 304, 262 N.Ed.2d 419. Appellant Enrico Davis argues pro se that his plea agreement stated that all sentences in the two cases would run concurrently, and that the imposition of four consecutive five-year prison sentences is contrary to law. It is apparent from the record that Appellant agreed to be sentenced to life in prison and that he only received a twenty-year prison sentence. Appellant cannot demonstrate any harm or prejudice by the trial court's decision to reduce concurrent life sentences to four consecutive five-year sentences. We conclude that this appeal is frivolous, and under the holding set forth in Toney, supra, counsel's motion to withdraw is sustained and the judgment of the trial court is affirmed.
 BACKGROUND OF THE CASE {¶ 2} In 1999, Appellant was indicted in the Mahoning County Court of Common Pleas on one count of rape of a child less than 13 years old. This case was designated as No. 99-CR-180. During the course of the case, Appellant was placed on electronically monitored house arrest ("EMHA"), and on July 5, 2001, the court completely removed EMHA and Appellant was free on bond.
 {¶ 3} In August 2001, Appellant was separately indicted in Case No. 01-CR-742 on one count of aggravated burglary and three counts of rape of a child less than 3 years old, these involving a different child. These rapes first occurred on July 15, 2001, which was a mere ten days after he was taken off EMHA in the prior case.
 {¶ 4} The rape charges in both indictments stated that the crime carried a life sentence in prison. The additional burglary charge was a first-degree felony subject to up to ten years in prison.
 {¶ 5} On February 24, 2004, Appellant entered into two separate plea agreements in the two cases. In the first matter, the parties agreed to a five-year prison sentence, and the trial court subsequently imposed a five-year prison term. In the second, the plea agreement appears to have been modified by the trial court after it was signed by the parties. The typed agreement states that Appellant would be subject to three life sentences for the rape charges, and an additional three to ten years on the burglary charge. The agreement also stated that the life sentence was mandatory. The second page of the agreement states that the sentences for all counts would be concurrent and would also be concurrent with the sentence in the 1999 matter. The trial court at some point crossed out the words "life in prison" on the plea agreement and wrote "3-10" instead. At sentencing, the trial judge did not treat the plea as containing any mandatory life sentences, and the judge proceeded to impose five-year prison terms for each of the four counts, to be served consecutively, despite the language in the plea agreement calling for life sentences to be served concurrently. The state did not appeal the ruling and allowed the reduced sentence to stand.
 {¶ 6} On May 25, 2004, Appellant filed an appeal in both cases. Appellant's counsel subsequently filed a motion to withdraw as counsel pursuant to Anders v. California (1967),386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493, and pursuant to this Court's ruling in Toney, supra. Counsel also filed a brief outlining the procedural events mentioned above and reiterated that there were no viable issues to pursue on appeal. Appellant filed a pro se brief arguing that the state violated the plea agreement by sentencing him to consecutive sentences rather than concurrent sentences. The state filed a responsive brief, and Appellant further filed a pro se reply brief. This appeal has been pending for a considerable length of time because the case file was not delivered to our court administrator, despite numerous requests, and was apparently misplaced.
 FRIVOLOUS NATURE OF THE APPEAL {¶ 7} Appellant's counsel filed a "no merit" brief and has asked to withdraw as counsel. "It is well settled that an attorney appointed to represent an indigent criminal defendant on his or her first appeal as of right may seek permission to withdraw upon a showing that the appellant's claims have no merit. See, generally, Anders v. California (1967),386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493; State v. Toney (1970),23 Ohio App.2d 203, 52 O.O.2d 304, 262 N.Ed.2d 419. To support such a request, appellate counsel must undertake a conscientious examination of the case and accompany his or her request for withdrawal with a brief referring to anything in the record that might arguably support the appeal. Id. The reviewing court must then decide, after a full examination of the proceedings, whether the case is wholly frivolous. Id." State v. Odorizzi (1998),126 Ohio App.3d 512, 515, 710 N.E.2d 1142.
 {¶ 8} In Toney, this Court set forth the procedure to be used when counsel of record determines that an indigent's appeal is frivolous:
 {¶ 9} "3. Where a court-appointed counsel, with long and extensive experience in criminal practice, concludes that the indigent's appeal is frivolous and that there is no assignment of error which could be arguably supported on appeal, he should so advise the appointing court by brief and request that he be permitted to withdraw as counsel of record.
 {¶ 10} "4. Court-appointed counsel's conclusions and motion to withdraw as counsel of record should be transmitted forthwith to the indigent, and the indigent should be granted time to raise any points that he chooses, pro se.
 {¶ 11} "5. It is the duty of the Court of Appeals to fully examine the proceedings in the trial court, the brief of appointed counsel, the arguments pro se of the indigent, and then determine whether or not the appeal is wholly frivolous.
 {¶ 12} "6. Where the Court of Appeals makes such an examination and concludes that the appeal is wholly frivolous, the motion of an indigent appellant for the appointment of new counsel for the purposes of appeal should be denied.
 {¶ 13} "7. Where the Court of Appeals determines that an indigent's appeal is wholly frivolous, the motion of court-appointed counsel to withdraw as counsel of record should be allowed, and the judgment of the trial court should be affirmed." Toney, supra, at syllabus.
 {¶ 14} Although the procedural history of this case is unusual, there is no possible merit to Appellant's claim that he is entitled to concurrent sentences that would result in a total sentence of five years in prison. First, the prosecutor would not have had the authority to promise that Appellant would receive concurrent sentences because it is the trial judge who retains the discretion to impose any sentence authorized by law when implementing a plea agreement: "A trial court does not err by imposing a sentence greater than `that forming the inducement for the defendant to plead guilty when the trial court forewarns the defendant of the applicable penalties, including the possibility of imposing a greater sentence than that recommended by the prosecutor.'" State v. Buchanan, 154 Ohio App.3d 250,2003-Ohio-4772, 796 N.E.2d 1003, ¶ 13, quoting State v.Pettiford (Apr. 22, 2002), 12th Dist. No. CA2001-08-014; accord,State v. Gant, 7th Dist. No. 04 MA 252, 2006-Ohio-1469, at ¶23. As we recently held in Gant: "Crim.R. 11 does not contemplate that the defendant and the prosecutor will bargain for a specific punishment, given that the punishment is either established by statute or left to the discretion of the sentencing judge." Gant, supra, at ¶ 23, citing State v.Mathews (1982), 8 Ohio App.3d 145, 8 OBR 202, 456 N.E.2d 539.
 {¶ 15} Any alleged agreement that Appellant had with the prosecutor concerning concurrent sentences was, at most, a recommendation for concurrent sentences, and the prosecutor stated as much at the change of plea hearing. (2/23/04 Tr., p. 3.) As will be further explained below, both parties and the trial judge were keenly aware that the sentence recommended in the plea agreement was merely that: a recommendation and not an absolute guarantee of the sentence that would be imposed.
 {¶ 16} Even if the prosecutor did have the power to actually guarantee concurrent sentences, the plea agreement, when read as a whole, reveals that the sentence would be three lifesentences to be served concurrently, and not simply concurrent sentences of an indiscriminate length. A plea agreement is a contract between the state and the defendant, and plea agreements are interpreted and enforced using principles of contract law.Baker v. United States (C.A.6, 1986), 781 F.2d 85, 90. When interpreting a contract, it must be read as a whole and the intent of the parties is gathered from a consideration of the whole contract. Saunders v. Mortensen, 101 Ohio St.3d 86,2004-Ohio-24, 801 N.E.2d 452, at ¶ 16.
 {¶ 17} Although the trial judge decided not to impose a life sentence, it is apparent from the record that Appellant did agree to serve a life sentence. At Appellant's change of plea hearing on February 23, 2004, the prosecutor stated that Appellant would be subject to life sentences and that the life sentences would run concurrently, and Appellant's counsel agreed:
 {¶ 18} "MS. KRUEGER [Prosecutor]: * * * And then in Case No. 01-CR-742, the defendant will be entering pleas of guilty to all counts in the indictment.
 {¶ 19} "THE COURT: Okay.
 {¶ 20} "MS. KRUEGER: And our agreement was that the life sentences were to be run concurrent, and then that case was to be run concurrent with 99-CR-180.
 {¶ 21} "THE COURT: And 99-CR-180 is also concurrent with 742, obviously.
 {¶ 22} "MS. KRUEGER: Right.
 {¶ 23} "MR. TAYLOR [Defense Counsel]: That is correct, Your Honor. That is the understanding of my client, and he is willing to proceed with the recommendation." (2/23/04 Tr., p. 3.)
 {¶ 24} Later in the plea hearing, the trial judge told Appellant that he did not consider the life sentences to be mandatory and would only sentence him as if the charges were first degree felonies with maximum ten-year prison terms. (2/23/04 Tr., p. 8.) The court then explained that the prosecutor's recommendation as to sentencing was one factor to be considered, but that ultimately the trial judge would be the only person to decide the ultimate sentence:
 {¶ 25} "THE COURT: * * * And I'm telling you right now that what the prosecutor says weighs heavily on me. What Doug Taylor, your lawyer says, weighs heavily on me. But I'm the dude. You understand?
 {¶ 26} "THE DEFENDANT: Yes, Sir.
 {¶ 27} "THE COURT: I'll make the decision. And you're going to be sentenced to one of the sentences that's provided by statute. You understand?
 {¶ 28} "THE DEFENDANT: Yes, Sir." (2/23/04 Tr., p. 13.)
 {¶ 29} At the sentencing hearing on May 7, 2004, the prosecutor recommended that five prison terms of ten years each be imposed, to run consecutively. (5/7/04 Tr., p. 14.) Appellant's counsel did not object to this recommendation as being outside the realm of the plea agreement, and did not even mention the possibility of concurrent sentences in his closing argument to the court. (5/7/04 Tr., pp. 14-18.) In fact, counsel opened his argument by saying that: "Enrico Davis knows that he's going to the penitentiary for a very, very long time. He knew that when he entered his plea." (5/7/04 Tr., p. 14.)
 {¶ 30} Thus, the record indicates that Appellant knew he was subject to life imprisonment, the prosecutor intended to recommend life imprisonment (and that any successive terms of imprisonment would be recommended to be served concurrently), and that the trial court fully explained that the sentence was up to the court's discretion regardless of the recommendation of either party.
 {¶ 31} The plea agreement presupposes that Appellant would be subject to a mandatory term of life in prison, and the agreement specifically expresses this point: "I understand the MAXIMUM penalty COULD be: a maximum basic prison term of life in prison, of which life is mandatory, during which I am eligible for judicial release or community control." (2/24/04 Plea Agreement, p. 1.)
 {¶ 32} What Appellant agreed to was mandatory life imprisonment on three counts, to run concurrently. Instead, Appellant received a twenty-year sentence. The prosecutor ultimately acquiesced to the trial court's decision to impose this sentence rather than life in prison. Whether correctly or incorrectly, Appellant received a less severe punishment than was bargained for in the plea agreement, and there is no possibility that Appellant can show any harmful or prejudicial effect by the trial court's decision to impose less than a life sentence. Although there may be some lingering questions as to why the court imposed less than a life sentence, the ultimate result was that Appellant received a less harsh sentence than that contained in the plea agreement. It can be argued that Appellee was the party harmed by the trial court's interpretation, however Appellee chose to accept the trial court's ruling without objection or appeal.
 {¶ 33} Under a Toney analysis, we must determine whether the appeal is wholly frivolous, or whether new counsel should be appointed to pursue a possible meritorious issue on appeal. In this case, new counsel might further clarify what exactly happened during the trial proceedings, but no amount of arguing can change the fact that Appellant was not harmed by the trial court's reduced sentence. Therefore, this appeal is wholly frivolous. Counsel's motion to withdraw is hereby sustained, and the judgment of the Mahoning County Court of Common Pleas is affirmed in full.
Donofrio, P.J., concurs.
Vukovich, J., concurs.